IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAY R. SCHMITT, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-01341-JPG-DGW |
| ) | |
| CENTRAL PROCESSING ) | |
| CORPORATION, a Florida corporation, ) | |
|  and ) | |
| COUNTY MATERIALS CORPORATION, ) | |
| a Wisconsin Corporation, ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM and ORDER**

This matter comes before the Court on Defendants Central Processing Corporation ("CPC") and County Materials Corporation's ("CMC") Motion (Doc. 19) for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff filed a timely response (Doc. 22) and Defendants filed a reply (Doc. 24). Pursuant to Local Rule 7.1(c), reply briefs are not favored and should be filed only in exceptional circumstances. Defendants have stated exceptional circumstances in their reply and the Court will consider the reply brief.

I. **Background.**

This matter was brought pursuant to the Age Discrimination in Employment Act ("ADEA")(29 U.S.C. § 621, *et seq.*). Defendant CMC is a pre-stressed concrete business with a location in Salem, Illinois[1] and CPC provides labor to CMC[2]. CMC acquired the Salem plant formerly owned by Egyptian Concrete in 2009. The Plaintiff was hired by CMC regional manager Scott Boma in December of 2009 and he was terminated by Mr. Boma on April 4, 2014.

---

[1] CMC is incorporated in Wisconsin.
[2] According to the Motion for Summary Judgment, CPC is a management services company.

1

Plaintiff first started working at the Salem plant in 1983 for the previous owner and he was continuously employed in various positions at that location from 1983 until his termination on April 1, 2014.  At the time of his termination, Plaintiff was "nearly 60 years of age" and he alleges that he was, "the oldest salaried employee at the Salem facility."  He states that he was terminated because of his age in violation of § 623(a)(1) of the Age Discrimination in Employment Act.  Defendants state that the plaintiff was terminated because his position was eliminated due to lack of work.

The Defendants move for summary judgment alleging that the "Plaintiff cannot point to sufficient evidence that would allow a reasonable jury to conclude that the Plaintiff's age was the 'but-for' cause of Defendants' decision to terminate his employment" and that the only inference supported by the facts indicates that the Defendants did not discriminate against the plaintiff.

II. **Standard**.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between

the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

III. **Analysis**.

The purpose of the ADEA is "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C.A. § 621 (West).

§ 623(a)(1) of the ADEA provides that is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

"To establish a disparate treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177-8.

"A plaintiff can avert summary judgment for the defendant in an employment discrimination case by presenting enough evidence, whether direct or circumstantial, of discriminatory motivation to create a genuine issue for trial." *Radue v. Kmberly-Clark Corp., 217 F.3d 612, 616 (7th Cir. 2000).* "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Id.* Since most employers

are careful with regard to open discrimination, most employees must rely on circumstantial evidence to support discriminatory intent.

"'Direct' proof includes both evidence explicitly linking an adverse employment action to an employer's discriminatory animus, and circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action." *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013).

A plaintiff may also avert summary judgment by utilizing the *McDonnell Douglas* burden-shifting also known as the "indirect method." *See McDonald Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Morgan* at 996. To do so, he must first establish a prima facie case of discrimination by presenting evidence that: "(1) he is a member of a protected class; (2) he reasonably performed his job to his employer's expectations; (3) he was subject to an adverse employment action; and (4) other similarly situated employees who were substantially younger than him were treated more favorably." *Radue* at 617. "If the plaintiff has evidence that can meet those four criteria, the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action. If the employer does so, the burden shifts back to the plaintiff to present evidence that, if believed by the trier of act, would show that the real explanation for the action is discrimination." *Morgan* at 996.

Other similarly situated employees are not required to be completely identical, but they must be substantially similar. In this matter, at a minimum, the Plaintiff is required to show that the "other similarly situated employees" had "analogous attributes, experience, education and qualifications" and that the younger employees obtained the desired positions. *Radue* at 618. "A demonstration of substantial similarity would also require a showing that a common supervisor offered one of these other employees a position for which Radue was qualified, and that this

same supervisor also knew about Radue's availability but refused to offer the job to him." *Id.* Finally, "to satisfy the 'substantially younger' requirement, the relevant individual must be at least ten years younger than the plaintiff." *Id* at 619.

"The pretext inquiry focuses on whether the stated reason for the adverse employment action is *in fact* the reason for it – not on whether the stated reason is accurate or fair." *Zayas v. Rockford memorial Hospital,* 740 F.3d 1154 1158-9 (7th Cir. 2014)(*italic in original*). The Court also does not review an employer's business decision. *See Ritter v. Hill'Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000).

Finally, there is an "inference of nondiscrimination" in an age discrimination claim where the plaintiff is hired over the age of 40 and then fired by the same individual as it is unlikely that an individual would develop an aversion to older workers within a short period. *See Id.*; *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994).

Defendants argue that there is no direct or circumstantial evidence of discrimination and that the plaintiff may only rely on the indirect method to establish discrimination. However, the plaintiff argues that under both methods, there are sufficient issues of facts to defeat summary judgment.

Under the direct method, plaintiff admits he has "no smoking gun," but state the circumstances evidences "points strongly" in the direction of discrimination. Mainly, plaintiff contends that there was no elimination of his position. He states that in January 2013, there were four sales positions (Schmitt, Moore, Cooper & Tomaris) and that after he was terminated in 2014, there were still four sales positions (Cooper, Tomaris, Borcherding & Keenan). It is noted that of the four individuals remaining, three are over 50 years of age and one is 39 years old.

The defendants maintain that the plaintiff's position was eliminated as the fourth individual (Keenan) was hired in October of 2013, six months prior to the plaintiff's termination in April of 2014. As such, there were five individuals in that position prior to plaintiff's termination and plaintiff's termination brought the number back to four. Defendants also note that Keenan was hired due to the defendant's acquisition of an additional plant in northern Illinois; that Keenan was over the age of 50 (age 57); and that Keenan was established in the area of the new plant in northern Illinois.

The Plaintiff argues that Keenan was only assigned his prior responsibilities once the plaintiff complained of age discrimination and requested his records. He points to an email written by Mr. Boma (his supervisor) indicating that he intended to "move some of Lyndell's more basic take off duties to Chris and free Lyndell up now that Jay will not be returning." Plaintiff claims that this email is evidence that his duties were never intended to be assigned to Keenan and was only assigned after the Plaintiff indicated he was filing suit.

The "Lyndell" referred to in this email is Lyndell Borcherding (age 38) who also held the same position as the plaintiff. According the deposition of the plaintiff's supervisor, Mr. Boma, Keenan (over 50 years of age) has "bid 83% of the work that Schmitt previously handled, with Borcherding bidding the remainder (17%)." Mr. Boma further testified that, given defendant's acquisition of the new plant, Keenan and the Plaintiff were both selling the same products and that neither had enough work for full time. As Keenan was established in the new market in which the defendant was expanding, and had customers and contacts in northern Illinois that the Plaintiff did not have, the decision was made to terminate the plaintiff. Also, defendants' risk manager testified that she spoke with plaintiff's supervisor who informed her that he had two salespeople and really only needed one. (Doc.22-6, page 3).

The inference in the email that Mr. Borcherding would be receiving some of the Plaintiff's responsibility is supported by Mr. Boma's testimony that Mr. Borcherding did, in fact, receive some of the plaintiff's responsibilities. However, the email also indicated that some of Mr. Borcherding's duties – not the plaintiff's duties – would be transferred to Chris, the individual identified by the plaintiff as receiving more favorable treatment. The email is actually a stronger inference that Chris is not an "other similarly situated employee" who had "analogous attributes, experience, education and qualifications" as the plaintiff.

Plaintiff next argues that he was placed on furlough for lack of work during the three years preceding his termination, yet when a fellow salesperson resigned, a younger individual was hired to replace him instead of dividing the work among the remaining salespersons. The individual that resigned was Mr. Moore (age over 50) and Mr. Borcherding (age 38) was promoted to replace him. The promotion of Mr. Borcherding occurred a full year prior to the plaintiff's termination. There is no indication that the Plaintiff objected to the promotion of Mr. Borcherding or requested to take over Mr. Moore's responsibilities. Most damaging to the Plaintiff's position is his own testimony. Plaintiff testified in his deposition that when Mr. Moore left, "we divided them [Moore's responsibilities] up between Lyndell and I." (Doc. 20-4, page 86, line 20-23).

Plaintiff further admits that his supervisor spoke with him on two occasions about his lack of work and he also admits that he never made any suggestions to his supervisor about additional work he could perform. (Doc. 20-4, page 25). The Court notes that there were not any younger individuals in a commercial sales position when the plaintiff was furloughed in 2011, 2012, and January of 2013. Mr. Borcherding was not promoted to a sales position until April of 2013 and Mr. Everette was not hired until July of 2013.

With regard to other circumstantial evidence, plaintiff testified that he never heard anyone in management make a derogatory or discriminatory comment about his age or any employee's age. There was also no one else, to Plaintiff's knowledge, that defendant discriminated against because of age or for a reason other than age. (Doc. 20-4, pages 162-4).

Proceeding on to the indirect method, it is undisputed that the Plaintiff is a member of a protected class as he is over the age of 40. There is no indication or evidence that he did not reasonably perform his job to the defendants' expectations. Plaintiff also clearly suffered an adverse employment action as he was termination from his employment. Therefore, the question becomes whether the plaintiff can point to an individual more than 10 years younger that received the desired position.

Plaintiff points to Chris Everette as an individual more than 10 years younger than the Plaintiff that received a desired position both within his interrogatory responses and his deposition testimony. However, plaintiff testified that he never trained Chris in "in estimating or sales" and that he had no knowledge that Chris ever sold or estimated any I-beam jobs in Missouri or Illinois (Doc. 20-4, pg 102, lines 15- 25). Plaintiff further testified that Mr. Everette was never promoted and/or has held a sale position.

Plaintiff argues that he trained Mr. Everette; that for a period of time he performed Mr. Everette's duties; and that he was capable of assuming the duties again. However, Plaintiff is required to show that the "other similarly situated employees" had "analogous attributes, experience, education and qualifications" and that the younger employees obtained the desired position. Here, it does not appear that Mr. Everette was similarly situated.

According to the testimony, Mr. Everette was hired to fill the Technical Administrator/Project Coordinator position in July of 2013, nine months prior to the plaintiff's

termination. The Technical Administrator position is an hourly wage ($17.00 per hour) and the Plaintiff's commercial sales position is salaried (at the time of his termination, plaintiff salary was approximately $72,000.00). The Technical Administrator does not perform sales, bidding or estimating – the duties of the commercial sales position in which the Plaintiff held. The fact that the plaintiff could perform other jobs within the facility does not demonstrate, or infer, that he was terminated and Mr. Everette was given more favorable treatment. In fact, it appears that Mr. Everette is still performing the same duties he performed before the plaintiff was terminated.

Even if the Court gives the Plaintiff every benefit of doubt and finds that Chris Everette may have been treated more favorably, then having meet the four factors, "the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action. If the employer does so, the burden shifts back to the plaintiff to present evidence that, if believed by the trier of act, would show that the real explanation for the action is discrimination." *Morgan* at 996.

The Defendants have presented a non-discriminatory reason for plaintiff's termination in that the position was eliminated and the job responsibilities combined with another sale personnel. Plaintiff has testified that he has no evidence that the reason given by his supervisor for his termination was not true. (Doc. 20-4, page 163). Therefore, the plaintiff cannot meet his burden to present evidence that would show the real reason he was terminated was due to age discrimination.

Further, as stated above, there is an inference of nondiscrimination as the plaintiff was hired when he was over the age of 50 and then terminated four years later by the same supervisor. The individual that the Plaintiff claims to have been treated more favorably, by plaintiff's own testimony, was never trained in a sales position and never performed estimates

and/or sold jobs within Missouri or Illinois. Finally, three of the remaining four sale positions are individuals over the age of 50 and the plaintiff testified that he never observed any age discrimination (or other discrimination) while he was employed by the defendants until he was terminated.

As stated above, the Court's inquiry focuses on whether the stated reason for the adverse employment action is *in fact* the reason and the Court does not review an employer's business decision. In this case, the Plaintiff was furloughed numerous times for lack of work prior to his termination. He was then terminated and his position eliminated. There is insufficient evidence to indicate or infer otherwise and by Plaintiff's own testimony, Plaintiff has no evidence that the reason given by his supervisor for his termination was not true.

As such, plaintiff has failed to prove by a preponderance of the evidence, either direct or indirect, that his age was the "but-for" reason of his termination and defendants are entitled to summary judgment as a matter of law.

IV.     **Conclusion**.

For the reasons stated above, the Defendants Central Processing Corporation ("CPC") and County Materials Corporation's ("CMC") Motion (Doc. 19) for Summary Judgment is **GRANTED**. All pending motions are **DENIED** as moot and this matter is **DISMISSED** with prejudice. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** 3/11/2016

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**